No. 43,885

STATE OF KANSAS, *Appellee*, v. JOHN OSCAR ENGBERG, *Appellant*.

(400 P. 2d 701)

Opinion filed April 10, 1965.

*Arthur E. Palmer*, of Topeka, argued the cause, and *Lester M. Goodell, Marlin S. Casey, Raymond Briman, Murray F. Hardesty, Gerald L. Goodell, Wayne T. Stratton* and *Robert E. Edmonds*, all of Topeka, were with him on the brief for the appellant.

*R. K. Hollingsworth*, Deputy County Attorney, argued the cause, and *Robert C. Londerholm*, Attorney General, *Charles Henson*, Assistant Attorney General, and *Keith Sanborn*, County Attorney, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is a criminal action in which the defendant pleaded guilty to six counts of first degree robbery (G. S. 1949, 21-527, now K. S. A. 21-527) in one case, and a count of escaping custody (G. S. 1949, 21-736, now K. S. A. 21-736) in another case. The cases were heard together below and an appeal has been taken by the defendant from the judgment and sentence of the trial court in both cases.

The appellant states the questions to be as follows:

"(1.) Must a court inquire of the defendant, pursuant to G. S. 1949, 62-

1510 [now K. S. A. 62-1510], if he has legal reason why sentence should not be pronounced before pronouncing judgment?

"(2.) May the court impose habitual criminal penalties on the basis of out-of-state convictions which show on their face that the defendant was not afforded counsel at any stage of the proceedings?"

John Oscar Engberg, appellant, was charged by information in the district court of Sedgwick County, Kansas, with six counts of first degree robbery. Before he was arraigned in the district court on these charges another information was filed in the district court of Sedgwick County, Kansas, charging him with escaping jail before conviction and with felonious assault. (G. S. 1949, 21-434, now K. S. A. 21-434.) The felonious assault charge was dismissed by the state and is not involved in this appeal.

On September 16, 1963, at the call of the criminal docket the defendant was present in the lower court with counsel, at which time he requested a jury trial, waived formal arraignment, and entered a plea of not guilty. The state then informed him of its intention to invoke the habitual criminal act. Again on October 7, 1963, the defendant and his counsel were present in court and he was informed of the state's intention to invoke the habitual criminal act—that it would offer evidence to show two prior felony convictions.

Before calling upon the appellant to plead on the 10th day of October, 1963, the record discloses the trial court elicited from the appellant that he had three or four previous convictions. The appellant then entered a plea of guilty to six counts of robbery in the first degree and to one count of escaping custody before conviction. The court immediately sentenced the appellant on all counts to twenty-five years in the Kansas State Penitentiary under the habitual criminal act. (G. S. 1949, 21-107a, now K. S. A. 21-107a.)

Although the journal entries indicate full compliance with the provisions of G. S. 1949, 62-1510 (now K. S. A. 62-1510), the appellant contends, based upon his interpretation of the record, that the trial court at no time gave him an allocution or asked him or his attorney if either had anything to say before sentence was pronounced.

After the sentence was pronounced by the trial court, the state "for the record" introduced evidence that the appellant had previously been convicted of three felonies in the state of Colorado. This evidence consisted of a written document entitled "Mittimus" for each of the three prior Colorado convictions. The mittimus in two of those cases does not recite that the appellant was represented by

counsel in the Colorado proceeding. The other Colorado conviction shows that the appellant had counsel, and the appellant therefore contends it is not pertinent to this appeal.

It is the appellant's contention in this appeal that (1) the statutes of Kansas guarantee him the right to speak before sentence is pronounced; and (2) the sentence given by the court is illegal since it is based on the appellant's having three prior felony convictions, when the evidence before the court shows only one prior conviction which is not void for patent constitutional infirmity.

On the record presented, the court will not undertake to decide whether the appellant was given an allocution (the formal address of the judge to the prisoner, asking him why sentence should not be pronounced) in accordance with the requirements of K. S. A. 62-1510. Assuming, without deciding, that no allocution was given, is it imperative that the sentence in this case be set aside and the appellant remanded for proper sentencing?

G. S. 1949, 62-1510 (now K. S. A. 62-1510) provides:

"When the defendant appears for judgment, he must be informed by the court of the verdict of the jury, and ask whether he have any legal cause to show why judgment should not be pronounced against him."

G. S. 1949, 62-1511 (now K. S. A. 62-1511) follows the foregoing section of the statute and provides:

"If no sufficient cause be alleged or appear to the court why judgment should not be pronounced, it shall thereupon be rendered."

These statutes have formed a part of the law of criminal procedure in Kansas since 1868.

The appellant cites *Van Hook v. United States,* 365 U. S. 609, 5 L. Ed. 2d 821, 81 S. Ct. 823 (1961), where the federal statute regarding allocution was ignored, and the United States Supreme Court remanded the case for resentencing. (But see, *Hill v. United States,* 368 U. S. 424, 7 L. Ed. 2d 417, 82 S. Ct. 468 [1962].) The history of the allocution rule was traced in *Green v. United States,* 365 U. S. 301, 5 L. Ed. 2d 670, 81 S. Ct. 653 (1961). The appellant argues that no reason appears why our statute should not be given the same attention by our courts as the federal courts are required to give to the federal rule.

The allocution rule is based on the common law of England where as early as 1689 it was recognized that the court's failure to ask the defendant if he had anything to say before sentence was

imposed required reversal. (See Anonymous, 3 Mod. 265, 266, 87 Eng. Rep. 175 [K. B.]; and *Green v. United States*, supra.)

In 15 Am. Jur., Criminal Law, § 457, it is stated:

"In the light of modern tendency to treat the allocution as a mere formality, there is no question that it can be waived by the defendant, and this is done where counsel is present and no request to be heard is made and no objection is interposed to being sentenced without being heard. The ancient practice was for the court to ask the prisoner if he had anything to say why sentence should not be passed. It originated at a time when prisoners were not allowed the benefit of counsel, and where the court was counsel for the prisoner so far as to see that he was deprived of no legal right. . . ." (p. 115.)

The appellant contends there are two reasons why the allocution rule cannot be ignored in Kansas even where a plea of guilty is entered. He argues first, our statute directs that it be given; and secondly, in a case where the habitual criminal act may be imposed, the failure to give an allocution deprives the defendant of an opportunity to object to the imposition of the habitual criminal act.

In *State v. Woodman*, 127 Kan. 166, 272 Pac. 132, this court said:

". . . After conviction, however, and before the allocution the defendant should be timely apprised that a sentence under the act of 1927 [the habitual criminal act] will be demanded against him, so that he may show cause, if he can, why such higher penalty should not be imposed. . . ." (p. 172.)

Based upon the foregoing citation the appellant argues this court has thus made the time of the allocution the time when the defendant in a criminal case must make his objections to the imposition of the habitual criminal act. It is to be noted, however, in the instant case that the appellant was twice advised, once on September 16, 1963, and again on October 7, 1963, prior to his hearing on the 10th day of October, 1963, that the state intended to invoke the habitual criminal act. In other words, the state did not wait until after the appellant had entered a plea of guilty to so advise him. Furthermore, the appellant, after having been so informed by the state, readily admitted to the trial court at least three prior felony convictions at a time when the appellant was represented by counsel who was present in court with him. If the appellant had any objection to the imposition of the provisions of the habitual criminal act, the appellant or his counsel should have raised such objection when the trial court first directed its inquiry to the appellant concerning previous convictions.

Be that as it may, the appellant argues he was given no opportunity to make his objection to the imposition of the habitual criminal act because there was no allocution, and because the evidence upon which the habitual criminal penalty was imposed was not introduced by the state until after sentence had been passed.

The foregoing argument is readily answered by the fact that where the defendant in a criminal action admits his prior convictions without raising objection, the state is not obligated to introduce further evidence of such prior convictions. (*Darling v. Hoffman,* 180 Kan. 137, 299 P. 2d 594; and *State v. Graham,* 172 Kan. 627, 242 P. 2d 1067.)

In *State v. Lund,* 51 Kan. 1, 32 Pac. 657, it was held that failure to give the allocution was not material error in a misdemeanor case. There the complaint was that the judgment was void because it did not show the allocution had been given before it was rendered. It was held failure of the judgment to show compliance with the statute was not reversible error especially in a misdemeanor case where the defendant's presence is not absolutely required during the trial upon such charge.

The appellant relies on *State v. Jennings,* 24 Kan. 642, to the effect that even where no ground appeared why sentence should not be imposed, and no allocution was given, this court has remanded for resentencing in a felony case. There the court was confronted with a first degree murder case and the court confined its decision to the particular facts and circumstances of the case. The court said:

"The defendant, by his counsel, now asks and urges that this court shall set aside the judgment of the court below, and grant him a new trial; and if the new trial cannot be granted, he still urges that we shall set aside the judgment of the court below, so as to place the defendant back in the same situation and condition in which he was prior to the rendering of such judgment, and subsequent to the rendering of the verdict; and he urges this upon the ground, among others, that the court below failed to inform him of the verdict of the jury, and to ask him whether he had any legal cause to show why judgment should not be pronounced against him. It is true that the record fails to show that this was done. The record shows that the defendant excepted to the sentence, on the ground that the verdict was not sufficient to sustain such a sentence; but it does not in any other manner show that the defendant was informed as to what the verdict was, or that he had any opportunity extended to him to show cause why judgment should not be pronounced against him. We have, with great doubts and many misgivings, come to the conclusion to grant this last request of the defendant. . . ."

"We wish to confine this decision within the particular facts and circumstances of this case. Therefore, such decision will be as follows:

"Where a defendant is charged on information with committing murder in the first degree, and 'the jury find the defendant guilty in manner and form as charged in the information,' without otherwise stating the degree of the offense of which they find him guilty, and no motion for a new trial is made, and the court sentences him as for murder in the first degree, and the record of the case does not show that he was informed by the court of the verdict of the jury, and asked whether he had any legal cause to show why judgment should not be pronounced against him, it will be held by the supreme court that the judgment of the court below must be set aside, and the cause remanded with the order that the defendant be again taken before the court below for sentence and judgment, and for such other and further proceedings as may be properly had in the case; and that before sentence or judgment shall be again pronounced against him, he shall 'be informed by the court of the verdict of the jury, and asked whether he have any legal cause to show why judgment should not be pronounced against him.' . . ." (pp. 658, 659, 660.)

Here, it is argued, there is a legal reason why the increased penalty should not be imposed—that is, two of the former convictions introduced in evidence appear to be void because the appellant was not represented by counsel. Thus, it is argued the complusion for remand seems much greater than in *State v. Jennings,* supra. (See, Annotation, 96 A. L. R. 2d 1292, 1337.)

The section of the statute here under consideration (62-1510, *supra*) is a procedural section of the criminal code. Therefore, failure to comply with its terms is not jurisdictional. Of course, failure to give an allocution is error where the statute directs that it be given, but it is not reversible error unless it has affected a *substantial right* of the defendant in a criminal action.

G. S. 1949, 62-1718 (now K. S. A. 62-1718) provides:

"On an appeal, the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties."

Interpreting the foregoing statute this court said in *State v. Neff,* 169 Kan. 116, 218 P. 2d 248:

"The statute is not permissive but mandatory. It does not say the court *may* give judgment without regard to technical errors or defects, etc. It says, '. . . the court *must* give judgment. . . .'" (p. 129.)

In the early case of *State v. Hammon,* 84 Kan. 137, 113 Pac. 418, speaking of 62-1718, *supra,* this court said:

"The section of the code of criminal procedure quoted is an expression of the sound and sensible rule that error, to be availing, must be injurious in fact

as well as in theory. This section has been upon the statute book since 1868 (Gen. Stat. 1868, ch. 82, § 293); and even before that, in 1860, this court, in the case of *The Territory v. Reyburn*, 1 Kan. [Dassler's ed.] 551, in the second paragraph of the syllabus said:

"'The whole spirit of the civil and criminal codes of practice, alike, is to disregard technicalities and observe the substance only.'

"Without referring to numerous early authorities, it is sufficient to suggest that this doctrine, now, in this state, made almost venerable by time, has in recent as well as in former years been approved and followed by this court. . . ." (pp. 145, 146.)

Could it be said that failure to give the appellant an allocution in the instant case affected a substantial right of the appellant?

Aside from the fact that the appellant admitted at least three prior felony convictions, is the appellant in this proceeding in a Kansas court entitled to attack the validity of a judgment of conviction in a foreign jurisdiction?

The appellant argues it is now beyond question that the Sixth Amendment to the Federal Constitution, providing that "In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence," is operative upon the states through the Fourteenth Amendment. (*Gideon v. Wainwright*, 372 U. S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792, 93 A. L. R. 2d 733 [1963].) It is further argued the United States Supreme Court has made it clear that its decisions on the right to counsel are retroactive in effect. (See, *Smith v. Crouse*, 192 Kan. 171, 386 P. 2d 295, reversed 378 U. S. 584, 12 L. Ed. 2d 1039, 84 S. Ct. 1929 [1964]; *Palumbo v. State of New Jersey*, 334 F. 2d 524 [3rd Cir. 1964]; and *United States v. LaVallee*, 330 F. 2d 303 [2nd Cir. 1964], cert. den. 377 U. S. 998, 12 L. Ed. 2d 1048, 84 S. Ct. 1921 [1964].)

In *United States v. LaVallee*, supra, the Second Circuit Court of Appeals sitting *In Banc* held that *Gideon v. Wainwright*, supra, was retroactive in effect; that the petitioner in a federal habeas corpus action could attack his prior convictions in the federal court; that as a New York prisoner the petitioner was not obligated to challenge out-of-state convictions in courts of the rendering state; and that New York provides no procedure whereby such prior convictions could be challenged in New York courts. The court also held there were no state remedies to be exhausted as a requisite to federal habeas corpus proceedings attacking the New York second offender sentences where all prior convictions were obtained in other states.

In the year 1949 this court in *McCarty v. Hudspeth*, 166 Kan.

476, 201 P. 2d 658, had before it a petitioner in a habeas corpus proceeding who was sixteen years of age at the time he was first arrested pursuant to a warrant in a felony action. In a subsequent criminal proceeding in the district court of Wyandotte County, Kansas, the petitioner was given an increased penalty by reason of prior convictions pursuant to the habitual criminal act. The validity of his sentence was challenged on the ground that he was not represented by counsel in the criminal proceedings which resulted in his two prior felony convictions, also within the jurisdiction of the district court of Wyandotte County, Kansas. It was held the failure of the trial court to appoint counsel for a sixteen-year-old boy who was charged with felonies was not in accord with due process of law and convictions entered on pleas of guilty by such boy were void, and that upon a subsequent prosecution for a felony committed while he was out on parole, the increased sentences by reason of the prior convictions should be set aside, and the petitioner returned to the trial court for a proper sentence in which the void convictions should not be considered.

In the instant case, however, we are not confronted by prior felony convictions which occurred within the jurisdiction of this state. Here the prior convictions occurred in the state of Colorado, and in our opinion they are not subject to collateral attack in the courts of this state. The full faith and credit clause of the United States Constitution requires that the courts of this state give full faith and credit to the judgments of the courts of our sister states. The judgments of Colorado are entitled to full faith and credit and to a presumption of validity. (*Coppage v. Hand,* 185 Kan. 708, 710, 347 P. 2d 400.)

We therefore hold the appellant was not entitled to attack the validity of his prior felony convictions in the trial court, and as a result was not prejudiced by the failure of the trial court to give an allocution—his substantial rights have not been affected.

The judgment of the lower court is affirmed.