George Billie **SMITH**, Petitioner,

v.

Sherman H. **CROUSE**, Warden, Respondent.

Herman L. **ADAMSON**, Petitioner,

v.

Sherman H. **CROUSE**, Warden, Respondent.

Curtis Edison **LEWIS**, Petitioner,

v.

Sherman H. **CROUSE**, Warden, Respondent.

Civ. Nos. L–337, L–339, L–346.

United States District Court
D. Kansas.

Aug. 21, 1968.

Jim Lawing, Wichita, Kan., for George Billie Smith.

Richard Rock, Arkansas City, Kan., for Herman L. Adamson.

Jerry Donnelly, Lawrence, Kan., for Curtis E. Lewis.

Edward G. Collister, Jr., Asst. Atty. Gen., Topeka, Kan., for respondent.

### MEMORANDUM AND ORDER

THEIS, District Judge.

There have been filed with the Clerk of this Court three petitions for writs of habeas corpus, signed and verified by the petitioners George Billie Smith, Herman L. Adamson, and Curtis Edison Lewis. Accompanying each petition is an application in affidavit form for leave to proceed herein without prepayment of fees, i. e., in forma pauperis, as required by 28 U.S.C. § 1915. The petitioners are all currently in the custody of Sherman H. Crouse, Warden of the Kansas State Penitentiary at Lansing, Kansas, under or by color of authority of the State of Kansas.

After an initial examination of the pleadings an order to show-cause was issued in each case to the respondent, Sherman H. Crouse, Warden. Following the show-cause order an answer and traverse was filed in each case and it was determined that an evidentiary hearing should be held in each case. At the hearings the petitioner George Billie Smith was represented by Jim Lawing, of Wichita, Kansas, as court-appointed counsel; the petitioner Herman L. Adamson was represented by Richard Rock, of Arkansas City, Kansas, as court-appointed counsel; and the petitioner Curtis Edison Lewis was represented by Jerry Donnelly, of Lawrence, Kansas, his own retained counsel. The respondent, Sherman H. Crouse, Warden, was represented by Robert C. Londerholm, Attorney General of the State of Kansas, and Daniel Metz, Jon Sargent and Edward G. Collister, Jr., Assistants to the Attorney General.

The facts alleged in the pleadings before the Court in all three cases for habeas relief, and the material adduced at the evidentiary hearings, present the constitutional issue of whether the petitioners have been properly sentenced as habitual criminals under K.S.A. § 21-107a. Whether these petitioners are entitled to relief depends on the answer to two questions: (1) whether these petitioners have exhausted their state remedies when the State of Kansas, through its Supreme Court, recognizes the validity of *all* foreign state convictions upon a "full faith and credit" premise; and (2) whether the so-called "prematurity doctrine," i. e., that a prisoner not entitled to release under a present valid conviction may not attack the constitutional validity of consecutive future sentences or recidivist sentences used as a basis for enhancing a sentence given on the valid conviction, remains viable as a rule of law.

Show-cause orders were issued in these three cases on the basis of very recent Supreme Court decisions in Burgett v. State of Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed.2d 319 (1967), and Mempa v. Rhay, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967), and the logic of the decision of the Fourth Circuit in Rowe v. Peyton, 383 F.2d 709, 719 (1967), which has since been affirmed ·by the Supreme Court in its decision of May 20, 1968, in Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426.

These cases are now consolidated under Rule 42(a) of the Federal Rules of Civil Procedure, for the reason that the facts presented in each petition are similar and each presents an identical proposition of law. The Court, after consideration of the files, evidence and briefs in each cause, makes the following findings and orders.

**1032**

## GEORGE BILLIE SMITH

The petitioner, George Billie Smith, was found guilty in the District Court of Sedgwick County, Kansas, of second degree robbery and grand larceny in June of 1962. During the trial and sentencing the petitioner was represented by court-appointed counsel. At the time of sentencing evidence was presented of three prior convictions, two from the State of Oklahoma, and one from the District Court of Butler County, Kansas. Under the provisions of K.S.A. § 21–107a, the Habitual Criminal Act was invoked and George Billie Smith was sentenced to a term of life imprisonment at the Kansas State Penitentiary at Lansing, Kansas. Documentary evidence used to invoke the Habitual Criminal Act included the following felony convictions:

In 1934, George Billie Smith was convicted in Oklahoma for robbery with firearms, at which time he was sentenced to fifteen years in the Oklahoma State Penitentiary, after his plea of guilty.

In 1946, he was convicted in Oklahoma on the charge of attempted murder and was sentenced to serve fifty years in the Oklahoma State Penitentiary after his plea of guilty to that offense. This sentence was later corrected to a term of only four years, after the petitioner had already served six years of the original fifty-year sentence.

In 1955, the petitioner was convicted in the District Court of Butler County, Kansas, of second degree burglary, and sentenced to a term of five to ten years in the Kansas State Penitentiary.

In August of 1967, George Billie Smith filed a motion under the provisions of K.S.A. § 60–1507 in the District Court of Sedgwick County, Kansas, attacking the sentence he is currently serving. This motion raised the issue that the State of Kansas used three prior convictions to invoke the Habitual Criminal Act where it was alleged the two Oklahoma convictions were invalid because the defendant George Billie Smith was not provided with or represented by counsel. Smith does not question the validity of his Kansas convictions in either Butler or Sedgwick Counties. In October of 1967 the Judge of the District Court of Sedgwick County, Kansas, denied the petitioner relief, counsel was never appointed, an evidentiary hearing was never had, and no appeal has ever been taken from the order of the Sedgwick County District Court.

The petitioner, George Billie Smith, has sought relief in the United States District Court on two earlier occasions and was denied access to that forum for the reason that he had failed to exhaust his state remedies. In this matter now before the Court the answer and return of the Attorney General of the State of Kansas to this Court's show-cause order, concedes:

"That under the present Kansas law, as announced in the cases of State v. Engberg, 194 Kan. 520 [400 P.2d 701], and Chappell v. State, 197 Kan. 407 [416 P.2d 786], the petitioner does not have an available state court remedy for consideration of his claims directed at the prior out of state convictions."

■ At the evidentiary hearing the testimony of the petitioner and a prison official was taken, and certain documentary evidence was introduced. From this evidence the Court finds that the journal entries of judgment of the two Oklahoma convictions of the defendant in 1934 and 1946 show affirmatively on their face that the defendant had no counsel either at the time of his plea or sentence. From the testimony in the case the Court finds that George Billie Smith, as the defendant in two Oklahoma criminal cases, had no advice that he was entitled to counsel, no offer to appoint counsel, no adequate financial means to employ counsel, that there was no understanding or intelligent waiver of the right to counsel, and finally that, in fact, he had no counsel to represent him at any of his appearances before the Oklahoma court which resulted in the convictions.

Under the holdings of the United States Supreme Court in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the many cases following it, and in light of the recent cases of Burgett v. State of Texas, supra, and Mempa v. Rhay, supra, the Oklahoma convictions of 1934 and 1946, used to enhance the present sentence of the petitioner, George Billie Smith, in the District Court of Sedgwick County, Kansas, which he attacks by this petition, were void.

The evidence further showed that the third conviction used by the District Court of Sedgwick County, Kansas to invoke the Habitual Criminal Act and to justify the life sentence given the petitioner, was the 1955 conviction of petitioner in the District Court of Butler County, Kansas, on the offense of second degree burglary. The Court finds that this conviction was regular and valid on its face, that the defendant was represented by court-appointed counsel, and that such sentence was valid in all respects. The Court concludes that the Butler County felony sentence could be correctly and legally used as a recidivist decision in invoking the Habitual Criminal Act.

There was testimony, and it is conceded by counsel for the parties here before the Court, that under a life sentence under the statutory law of Kansas, a prisoner never becomes eligible for parole. Likewise, it was conceded that if all three convictions used to invoke the recidivist sentence were void, then the correct term of imprisonment for the petitioner under Kansas law would have been five to ten years, under which the petitioner would be entitled to be released from prison because service of sentence had been completed.

If the second-offender sentence, that is, if any one of the three convictions were valid, the legal sentence under the Habitual Criminal Act would have been ten to twenty years, the petitioner would presently be eligible to appear before the Kansas Board of Probation and Parole (in fact, eligible since October, 1967), and would be eligible for conditional release from prison some time in December of 1972, ten years and six months after his conviction.

It should be indicated here that the distinction between "parole" and "conditional release" is worth noting. In the former instance, release from confinement is discretionary with the Board of Probation and Parole, while "conditional release" is mandatory, the time being computed by deductions from the maximum term for "good time" and "incentive credits," and is the equivalent of a sentence served completely.

## HERMAN L. ADAMSON

The petitioner Herman L. Adamson, was brought to trial in the District Court of Sedgwick County, Kansas, and was found guilty of second degree burglary and larceny. Prior to sentencing, and at the State's request, the Judge of the District Court heard evidence and admitted two prior felony convictions, one from the State of Oklahoma for the offense of larceny of a domestic animal, where Adamson was sentenced to three years in the State Penitentiary at McAlester, Oklahoma, on March 2, 1951, after his plea of guilty. The other conviction was from the State of California for auto theft, where he was sentenced in July of 1960 to a term of six months to five years in that state. Thereafter, under K.S.A. § 21–107a, the trial judge invoked the Habitual Criminal Act and sentenced Herman L. Adamson to a term of ninety-nine years on the charge of second degree burglary, and ninety-nine years on the charge of larceny, said sentences to run consecutively. On motion of petitioner's attorney, these sentences were modified to consecutive terms of twenty-five years in the Kansas State Penitentiary at Lansing, Kansas. Herman L. Adamson then appealed the conviction of the District Court to the Supreme Court of Kansas, that case being reported as State v. Adamson, 197 Kan. 486, 419 P.2d 860 (1966).

The complaint made by the petitioner Adamson, and passed upon by the Kan-

sas Supreme Court, was that the County Attorney introduced evidence of two prior convictions, one being a previous Oklahoma felony conviction, and the other from the State of California. Adamson's complaint was that the journal entry of judgment from the State of Oklahoma failed to disclose that he was represented by counsel at the time he entered his plea of guilty to a criminal charge in the State of Oklahoma. The Kansas Supreme Court, in answering the petitioner's contention, stated:

"The defendant is not entitled, in this proceeding, to mount a collateral attack upon the validity of the Oklahoma judgment."

The Kansas Supreme Court cited as authority, in denying Adamson relief, State v. Engberg, 194 Kan. 520, 400 P.2d 701; Cert. Den., 383 U.S. 921, 15 L.Ed.2d 676, 86 S.Ct. 899. No issue was made as to the validity of the conviction in California, which was used in invoking the Habitual Criminal Act, and the Kansas Supreme Court only passed upon the conviction reflected by the journal entry from the State of Oklahoma.

Subsequent to the Kansas Supreme Court decision, Adamson then sought relief in the United States District Court by way of habeas corpus, which was denied under the rule of law then existing, that since he was not questioning the validity of the conviction upon which the sentence was based, and had time to serve as a result of the minimum sentence that might be imposed for such offense, the Court would not entertain his petition, under authority of Carpenter v. Crouse, 358 F.2d 701, a controlling Tenth Circuit case. In neither the Kansas Supreme Court case nor the previous habeas petition in federal court, did the petitioner question the validity of the California conviction.

Pursuant to Adamson's petition in this cause, alleging both the California and Oklahoma convictions to be void, a show-cause order was issued. At the evidentiary hearing the testimony of petitioner and an official from the Kansas State Penitentiary was taken and certain documentary evidence was introduced, all of which related to the invalidity of the Oklahoma conviction, or its effect on the length of sentence. No evidence was introduced as to the California conviction, nor renewed assertions made of its invalidity. From the evidence presented the Court finds that the journal entry of judgment of the Oklahoma conviction of March 2, 1951, in Pottawatomie County, Oklahoma, shows affirmatively on its face that the defendant had no counsel at any time during the course of criminal proceedings against him. The Court further finds that the defendant, at the time of his Oklahoma conviction, was a youth seventeen years of age, he had had no advice that the was entitled to counsel, no offer was ever made to appoint counsel, defendant was indigent and had no financial means to employ counsel, there was no understanding or intelligent waiver of the right to counsel, and, in fact, he had no counsel to represent him in the case which resulted in the Oklahoma conviction. Hence, this Oklahoma conviction was void.

■ The petitioner Adamson, having had the opportunity, both in his appeal to the Kansas Supreme Court and at his evidentiary hearing before this Court, to attack the validity of the California conviction used to enhance his sentence under the Habitual Criminal Act, and having waived his opportunity by way of evidence and argument to question it, the validity of the prior felony conviction in the State of California is presumed.

The issue of the method used to prove the California conviction raised in the pleadings herein, that is, "improper proof" or trial error, in invoking the Habitual Criminal Act in the trial court, will not be considered by this Court, and as a procedural matter is a question which should have been raised and is reserved for state court action.

According to the evidence of the State Penitentiary official, as a state witness, the trial court, on the basis of one previous conviction, could double the sentences by imposing on the defendant sentences of ten to twenty years on the bur-

glary charge, and from two to ten years on the larceny charge, under which consecutively imposed sentences the defendant would have to serve sixteen years, with good time credits, and would not be eligible for conditional release until May 28, 1977. Neither would he be eligible for parole until some time in the future computed on a twelve year minimum sentence less good time and incentive credits.

## CURTIS EDISON LEWIS

The petitioner, Curtis Edison Lewis, was found guilty of two counts of forgery in the second degree in the District Court of Montgomery County, Kansas, and was sentenced on May 1, 1964, to concurrent terms of fifteen years under the provisions of K.S.A. § 21–631 and § 21–107a. The evidence used to invoke the Habitual Criminal Act under the provisions of K.S.A. § 21–107a, consisted of two prior felony convictions for forgery in the State of Oklahoma.

Curtis Edison Lewis appealed the judgment and verdict of the District Court of Montgomery County, Kansas, and in State v. Lewis, 195 Kan. 389, 405 P.2d 796, the Kansas Supreme Court affirmed and allowed the increase in sentence under the Habitual Criminal Act, and further found that the record disclosed ample evidence to show that Lewis had twice been convicted for the crime of forgery in the State of Oklahoma.

The record also discloses that this petitioner has previously filed two applications for a writ of habeas corpus in this Court, which were denied in 1965 and 1966, for the reason that even though the prior convictions used to invoke the Kansas Habitual Criminal Act might have been invalid, the petitioner still had time to serve under the primary sentence for the offenses of which he was convicted and under the then controlling decisions of the Tenth Circuit he was not entitled to release by way of habeas corpus.

After a show-cause order had been issued, an answer filed by the respondent and traverse by the petitioner, an evidentiary hearing was held on the sole question of the validity of the two Oklahoma convictions, upon the basis of which the Kansas Habitual Criminal Act was invoked to give the petitioner the present fifteen year sentence which he is serving.

As a result of the evidence taken at this hearing, the Court finds that the journal entries of judgment of the two Oklahoma convictions of the defendant in Nowata County, dated June 24, 1960 and June 22, 1962, show affirmatively on their face that the defendant had no counsel at any stage of the proceedings against him. There was likewise no advice given that he was entitled to counsel, no offer or attempt by the Oklahoma court to appoint counsel, the defendant had no financial means to employ counsel, there was no understanding or intelligent waiver of the right to counsel, and lastly, in fact, he had no counsel to represent him at any of his appearances before the Court in Nowata County which resulted in the two convictions used in Kansas to bring about the recidivist sentence of fifteen years.

As indicated in a discussion of the facts and legality of the recidivist convictions used as to the two previous petitioners, the Court finds that both Oklahoma convictions were void.

The evidence further showed that under the fifteen year sentence imposed by the use of the Habitual Criminal Act, the petitioner never would be eligible for parole under that sentence and would be entitled to conditional release only after the service of eight years of sentence with all good time and incentive credits. The evidence further showed that if both recidivist convictions were void, or had not been used, the petitioner's legal sentence would have been one to ten years under the Kansas statutes for second degree forgery, under which he would have been initially eligible for parole consideration in March of 1965, and eligible for conditional release five years and six months from the imposition of sentence, or some time in July of 1969.

## EXHAUSTION OF STATE REMEDIES

In the review of the three petitions under the provisions of 28 U.S.C.A. § 2254, a determination is required that the petitioners exercised and exhausted their state remedies, i. e., a direct appeal, or a motion pursuant to K.S.A. § 60–1507; or in the alternative, make a showing that these remedies are, in fact, inadequate or ineffective to test the petitioners' rights. This issue is governed in this Circuit by the rules announced in Wood v. Crouse, 389 F.2d 747 (10 Cir., 1968).

The respondent concedes, and this Court finds, that the petitioners have exhausted their remedies in the state courts. George Billie Smith filed a motion under the provisions of K.S.A. § 60–1507 in the District Court of Sedgwick County, Kansas, raising the issues now before this Court. His motion was overruled and no appeal has been taken. Herman L. Adamson pursued his case to the Kansas Supreme Court and it is reported in State v. Adamson, 197 Kan. 486, 419 P.2d 860 (1966), as did Curtis Edison Lewis, in State v. Lewis, 195 Kan. 389, 405 P.2d 796 (1965). Relief was denied by the Kansas Supreme Court in both cases on the theory that a defendant convicted of a felony cannot collaterally attack in a Kansas state court the judgment of a prior conviction rendered in another state.

In light of the rule formulated in State v. Engberg, supra, which in substance precludes a collateral attack on prior out-of-state convictions (but not convictions obtained within the state), the Kansas court has reasoned that a defendant is precluded by the "full faith and credit" clause of the United States Constitution from attacking a foreign conviction, and apparently these foreign convictions enjoy a conclusive presumption of validity.

The rule announced in State v. Engberg, supra, is stated as follows:

"The full faith and credit clause of the United States Constitution requires that the courts of this state give full faith and credit to the judgment of the courts of our sister states. The judgments of Colorado are entitled to full faith and credit and to a presumption of validity. (Coppage v. Hand, 185 Kan. 708, 710, 347 P.2d 400.)"

The rule announced in the *Engberg* case does not rest upon a provision of state law, but upon the full faith and credit clause of the Constitution. Therefore, the question before this Court is whether these foreign judgments of conviction used to invoke the Habitual Criminal Act in these three cases satisfy, due process requirements, and are entitled to full faith and credit in the courts of Kansas. Because a federal ccnstitutional question is involved, the interpretation placed by the Kansas Supreme Court on the full faith and credit clause is not binding on this Court. See United States Constitution, Article VI, Clause 2.

If the regularity and validity of these Oklahoma judgments now at issue were judgments of conviction entered by a sentencing court in Kansas, they could be reviewed under the authority of McCarty v. Hudspeth, 166 Kan. 476, 201 P.2d 658 (1949). The courts of Kansas, in light of the right to counsel, as announced in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), should then hold that such records are void for failure to appoint counsel. This test, which in reality is one of equal protection, destroys the presumption of validity of the journal entries of Oklahoma, which fail to conform not only to the requirements of the Fourteenth Amendment, but to the right of counsel established by court decision in the State of Kansas.[1] It only follows

---

1. See Hanson v. Denckla, 357 U.S. 235, 238, 78 S.Ct. 1228, 2 L.Ed.2d 1283, Rehear. Den. 358 U.S. 858, 79 S.Ct. 10, 3 L.Ed.2d 92, where the Delaware court was under no obligation to give full faith and credit to a Florida judgment which was invalid, even in Florida, for repugnancy to the due process clause of the U.S. Constitution, Fourteenth Amendment.

that Article IV, Sec. 1 of the United States Constitution, is a provision which establishes a rule of evidence that full faith and credit shall be given to judgments of other states.[2] This "rule of evidence," like all rules, has certain exceptions, the most notable of which, for example, is that an inquiry can be made into the jurisdiction of any court.

█ In the instant cases the convictions used to enhance the Habitual Criminal Act are a violation of the rule established in Gideon v. Wainwright, supra, and a collateral attack on such judgments does not offend the principle of full faith and credit. The United States Supreme Court, in Griffin v. Griffin, 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635 (1946), stated that a failure to observe constitutional requirements deprives a court of jurisdiction and any judgment rendered by such court is void and may always be questioned collaterally.

█ The decisions in *Burgett* and *Mempa* make it crystal clear that the *Engberg* rule, as laid down by the Supreme Court of Kansas, no longer has constitutional validity to bar habeas relief in cases having factual situations similar to those under consideration here.

### THE "PREMATURITY DOCTRINE"

█ On May 20, 1968, the United States Supreme Court, in Peyton v. Rowe, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426, overruled the doctrine established in McNally v. Hill, 293 U.S. 131, 55 S.Ct. 24, 79 L.Ed. 238 (1934). The McNally rule had been followed in this Circuit in Carpenter v. Crouse, supra, and in Browning v. Crouse, 356 F.2d 178 (10 Cir. 1966). The *Peyton* case has destroyed the rule that required these petitioners be available for immediate release before they could proceed by way of habeas corpus under the provisions of 28 U.S.C.A. § 2241 and § 2254. The Assistants to the Attorney General of Kansas, in oral argument and in their briefs, recognize and now concede their objection to the petitioners collaterally attacking the enhanced portion of their sentences. It is now recognized, as a result of Peyton v. Rowe, supra, that habeas corpus is available to test the validity of a sentence to commence or be served in the future, even though the petitioner would not be eligible for release or parole if the writ were granted.

The very logical and meritorious reason for the holding in the *Peyton* case, is set forth by Chief Justice Warren, as follows:

"Yet, under the current schedules of confinement, it is argued, neither Rowe nor Thacker may obtain adjudication of his claims until after 1990. By that time, dimmed memories or the death of witnesses are bound to render it difficult or impossible to secure crucial testimony on disputed issues of fact. Of course prejudice to meritorious claims resulting from the kind of delay which *McNally* imposes is not limited to situations involving ineffective assistance of counsel. To name but a few examples, factual determinations are often dispositive on claims of coerced confession, e. g., Reck v. Pate, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961); Leyra v. Denno, 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948 (1954); lack of competency to stand trial, e. g., Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed. 2d 815 (1966); and denial of a fair trial, e. g., Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600 (1966). Postponement of the adjudication of such issues for years can harm both the prisoner and the State and lessens the probability that final disposition of the case will do substantial justice."

█ The evidence in these cases plainly shows as to all three petitioners that material rights to be considered for accuracy of sentence time and for parole

---

2. Congress has exercised this power in 28 U.S.C.A. § 1738, which provides the manner of proof of judgments of one state in the court of another.

eligibility have been directly inhibited and infringed by the effect of the use of the void convictions to enhance their sentences under the Habitual Criminal Act. Relief is available to state prisoners in the federal courts where federal rights guaranteed by the United States Constitution have been violated. See Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770; Hickock v. Crouse, 334 F.2d 95 (10 Cir.); Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed. 285; Walker v. Wainwright (1968), 390 U.S. 335, 88 S.Ct. 962, 19 L.Ed.2d 1215; and Ex parte Hull (1941), 312 U.S. 546, 61 S.Ct. 640, 85 L.Ed. 1034.

### JUDGMENT OF THE COURT

These are days of some trepidation on the part of all state court judges and judges of the federal courts at levels below the Supreme Court, for the reason that the law relative to the interpretation of the Constitution of the United States, especially as it relates to application in criminal cases, is in a state of flux and continuing re-examination, as commendably it must always be in a growing, ever-changing, and dynamic Democracy, operating under the rule of law. Virtually all lawyers and judges, without surrendering originality of thought processes, operate under the rule of *stare decisis,* or the rule of precedent. A change in the law, or a reversal of precedent at the highest appellate court level, may well leave a lower court in a limbo of error, for which no adverse responsibility is to be attributed under the conventional precedent system obtaining in English and American law.

This Court is well aware that his brethren in the state courts, as well as the federal inferior courts, have experienced or will experience this judicial sensation. Likewise, being well aware that comity does exist between state and federal judges, and that federal courts should proceed with caution and due respect for state processes, the matter of relief here is one to be equated with both the rights of the petitioners and the interests of society, as represented by the State.

■ It is the judgment of this Court that the convictions upon which the present sentences were imposed on the petitioners were valid, but the sentences are void for constitutional reasons. Under Kansas law, it has always been considered that a void sentence is within the power of a court to substitute a new and valid sentence. See Johnson v. Hand, 189 Kan. 103, 367 P.2d 70 (1961). In the Tenth Circuit it has been held that federal courts will follow interpretation of the Constitution and laws of the state by the highest court of that state, unless such interpretation is inconsistent with the fundamentals of liberty and justice. See Newman v. Rodriguez, 375 F.2d 712 (1967).

As stated, the petitioners are presently being held under void sentences, and hence void commitments to respondent, even though under proper sentences they would not be entitled to immediate release. Under the purport of this opinion the Court has rendered judicial relief through the remedy of habeas corpus to each petitioner in the light of Peyton v. Rowe, supra, and to that extent a writ of habeas corpus is granted to each petitioner at this time.

■ In order for a reasonable time to ensue to give opportunity for the proper correction of the sentence of each petitioner, in accordance with the views expressed in this opinion, and in the interests of comity and justice, a stay of execution of each writ as to liberty for each petitioner is hereby decreed for a period of ninety (90) days, for the purpose of allowing the State of Kansas to obtain a correction of sentences in the respective trial courts, if it is deemed desirable and necessary. In the event that the State of Kansas shall fail to remand these prisoners for the correction of sentences within the indicated period of time, a writ shall issue as to each petitioner discharging him from the custody of the respondent.

It is so ordered.